**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

Dated: March 29 2013

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 10-30193 |
| | ) | |
| Gamma Center, Inc., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 12-3015 |
| | ) | |
| William L. Swope, Trustee, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Commercial Savings Bank, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER REGARDING
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

This adversary proceeding is before the court on cross-motions for summary judgment filed by Plaintiff, and Defendants Commercial Savings Bank ("the Bank") and Sudesh Reddy, M.D. ("Reddy"), [Doc. ## 19, 20 and 16], the Bank's and Reddy's responses to Plaintiff's motion, [Doc. ## 23, 25], Defendant Indi Singh's response to the Bank's and Reddy's motions [Doc. # 24], and the Bank's reply [Doc. 29]. Plaintiff is the Trustee in Debtor Gamma Center, Inc.'s underlying Chapter 7 case. In his complaint, Plaintiff seeks a declaratory judgment that the Bank does not have a perfected security interest in Debtor's accounts receivable and funds collected thereon and that those accounts and funds collected on the accounts

are assets of Debtor's Chapter 7 case to be administered for the benefit of Debtor's unsecured creditors. Plaintiff names as defendants not only the Bank but also individuals that allegedly have an interest in this matter based upon their status as guarantors of the debt owed to the Bank by Debtor, including Reddy, Indi Singh, Parminder Singh, and Sanjeev Verna.

The district court has jurisdiction over the underlying Chapter 7 case filed by Debtor Gamma Center, Inc. pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. The district court in turn has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding both arising in and related to the underlying Chapter 7 case of Debtor Gamma Center, Inc. Debtor's Chapter 7 case and this adversary proceeding have been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine the validity, extent, or priority of liens are core proceedings that this court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(K). Having considered the parties' motions and briefs in support of their respective positions, for the reasons that follow, the court will grant Plaintiff's motion for summary judgment and will deny the motions for summary judgment filed by Reddy and the Bank.

## FACTUAL BACKGROUND

Unless indicated otherwise, the following are facts to which Plaintiff and the Bank have stipulated and on which Reddy relies in support of his motion or facts gleaned from the Promissory Note and UCC Financing Statement attached to Plaintiff's and the Bank's motions for summary judgment, which Reddy and Indi Singh rely on or refer to in arguments in support of their respective positions.[1]

On November 26, 2004, Debtor executed a Universal Note and Security Agreement ("Note" or "Security Agreement") in favor of the Bank. [Doc. # 18, Stipulation ¶ 1, 3]. Pursuant to the Note, the Bank loaned Debtor $300,000.00, which funds were used for the purchase of a piece of equipment, namely, a Millennium Myosight Integrated Systems - Xelesis Nuclear Stress Test Camera ("Camera") and other related equipment. [*Id.*]. The introductory paragraph of the Security Agreement includes boilerplate language that provides that "a security interest in all of the Property described below . . . and all proceeds

---

[1] Generally, to be considered by the court at the summary judgment stage, "'documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e).'" *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000) (quoting *Oris v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)); *Hal Roach Studios, Inc. v. Richard Feiner and Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990). Although the Note and Security Agreement and the Financing Statement submitted in connection with the parties' motions were not properly authenticated by movants, *see*, *e.g.*, *United States v. Billheimer*, 197 F. Supp. 2d 1051, 1058 n.7 (S.D. Ohio 2002); *see also* Fed. R. Evid. 901-903, the Note and Security Agreement attached to the Bank's motion, which is identical to the Note and Security Agreement attached to Plaintiff's motion, was authenticated in the affidavit of Defendant Indi Singh, [Doc. # 26, ¶ 3]. And no party has objected to the court's consideration of the Financing Statement, so the court will consider it. *See Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 89 (6th Cir. 1993).

2

and products of the Property" is granted. [Doc. # 19, Ex. A, p.2, unnumbered ¶ 1].

Following the introductory paragraph of the Security Agreement is a list of ten asset categories to be checked to the extent they describe "Property" in which a security interest is being granted. [*Id.* at 2]. Included in that list is "Accounts and Other Rights to Payment" described as "[a]ll rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned." In addition to the asset categories listed is property identified under "Specific Property Description." [*Id.*]. Only "Specific Property Description" is checked, and it is followed by a description that the "Property includes, but is not limited by, the following: MILLENNIUM MYOSIGHT INTEGRATED SYSTEMS - XELERIS NUCLEAR STRESS TEST CAMERA INCLUDING ANY AND ALL RELATED EQUIPMENT. THIS NOTE IS FURTHER EVIDENCED AND PERFECTED BY A UCC FINANCING STATEMENT DATED NOVEMBER 26, 2004. [*Id.*]. The Note was also personally guaranteed by several individuals, including Reddy and Defendants Sanjeev Verna and Parminder Singh. [Doc. # 18, Stipulation ¶ 4].[2]

On December 30, 2004, the Bank filed with the Ohio Secretary of State a UCC-1 Financing Statement. [*Id.* at ¶ 2]. In the Financing Statement, the Bank claimed as collateral the Camera and related equipment as well as both "Proceeds of Collateral" and "Products of Collateral." [*Id.* at ¶ 5]. The Bank filed a continuation statement with the Ohio Secretary of State on December 22, 2009. [*Id.* at ¶ 6].

The nature of the medical practice conducted by Debtor was nuclear heart stress testing. [*Id.* at ¶ 10]. The Camera and related equipment securing the obligation owed to the Bank was used exclusively in that medical practice. [*Id.*]. It is undisputed that the Camera and related equipment do not create or manufacture a tangible product. [Doc. # 20, Ex. D, Parminder Singh Aff.].

On January 15, 2010, Debtor filed its Chapter 7 bankruptcy petition. Debtor includes accounts receivable in the amount of $325,653.33 as an asset in its bankruptcy schedules. [Case No. 10-30193, Doc. # 1, p. 8/35].[3] Debtor states in bankruptcy Schedule B that the scheduled value of its accounts receivable "is the billed amount to patients" but that "[t]he actual expected payment from insurance and patients is

---

[2] Plaintiff and the Bank stipulated that the Note "contained the personal guaranty of the following individuals: Chander Arora, Sudesh S. Reddy, Sanjeev Verna, Parminder Singh and Tarlok Purwal." Although Reddy correctly states in his motion that Indi Singh signed as a guarantor of the Note, Indi Singh was later released from that guarantee when his relationship with Debtor was severed in 2006. [*See* Doc. # 26, I. Singh Aff., ¶ 4].

[3] The court takes judicial notice of the contents of its case docket and the Debtor's schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

much less that this amount." [*Id.*]. The net amount of Debtor's accounts receivable that has been collected by Plaintiff totals $91,353.90. [Doc. # 18, Stipulation ¶ 9].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*.

In cases such as this, where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 n.6 (6th Cir. 1999). The fact that both parties simultaneously argue that there are no genuine factual issues does not in itself establish that a trial is unnecessary, and the fact that one party has failed to sustain its burden under Rule 56 does not automatically entitle the opposing party to summary judgment. *See* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2720 (1998).

### II. The Security Agreement

Plaintiff asks the court to find that the Bank does not have a perfected security interest in Debtor's accounts receivable or in the funds collected thereon and that the accounts and funds collected on the accounts are assets available to be distributed to unsecured creditors in the underlying Chapter 7 case. The

4

Bank and Reddy argue that considering both the Security Agreement and the Financing Statement together under a composite document theory, the intent to create a security interest in the proceeds and product of the Camera is clear. In its reply brief, the Bank also argues that the Security Agreement alone clearly creates such a security interest that was perfected by the filing of the Financing Statement. It is the Bank's and Reddy's position that identifying "proceeds and products" of the Camera as collateral reasonably identifies Debtor's accounts receivable as collateral. Plaintiff, on the other hand, argues that the Security Agreement evidences no intent to create a security interest in the proceeds and product of the Camera, and that, in any event, Debtor's accounts receivable do not constitute proceeds of the Camera.[4] Indi Singh, for his part, argues that Debtor's failure to check the box indicating that the property in which a security interest was being granted includes "Accounts" defeats any claim that accounts receivable were collateralized. The burden of proving that an item of property is subject to a security interest is on the party asserting the interest. *In re Standard Foundry Products*, Inc., 206 B.R. 475, 478 (Bankr. N..D. Ill. 1997).

The Bankruptcy Code defines a "security interest" as a "lien created by agreement." 11 U.S.C. § 101(51). Whether an agreement creates a lien depends upon state law. *See Butner v. United States*, 440 U.S. 48, 54-57 (1979). The Security Agreement provides that Ohio law governs. [Doc. # 19, Ex. A., p. 3]. Article 9 of the Uniform Commercial Code ("UCC"), as adopted by the Ohio legislature,[5] governs the creation and enforceability of a security interest in personal property. *See* Ohio Rev. Code § 1309.109 (A)(1) (providing that Article 9 applies to "[a] transaction, regardless of form, that creates a security interest in personal property or fixtures by contract"). Ohio Revised Code § 1309.203(B) provides, in relevant part, that

> a security agreement is enforceable against the debtor and third parties with respect to the collateral only if:
> (1) Value has been given;
> (2) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
> (3) One of the following conditions is met:
> (a) The debtor has authenticated a security agreement that provides a description of the collateral. . . .

A description of the collateral is sufficient "whether or not it is specific if it reasonably identifies what is described." Ohio Rev. Code. § 1309.108(A). A description reasonably identifies the collateral if it

---

[4] The parties do not address whether the definition "health-care-insurance receivable" in the Uniform Commercial Code, Ohio Rev. Code § 1309.102(A)(46), has any application in this case. Therefore neither does the court.

[5] The UCC was amended by the Ohio legislature in 2011. However, the court's statutory citations are to the UCC as in effect in 2004 when the Security Agreement was executed.

5

identifies the collateral by a specific listing, category, type of collateral defined in the UCC, or "any other method, if the identity of the collateral is objectively determinable." Ohio Rev. Code § 1309.108(B). "The test of sufficiency of a description [in a security agreement] . . . is that the description do the job assigned to it: Make possible the identification of the collateral described." *Id.*, Official Comment 2.

A security interest is enforceable against third parties once it is perfected. With certain exceptions not applicable here, a financing statement must be filed to perfect a security interest. Ohio Rev. Code § 1309.310(A). A financing statement is sufficient only if, among other things, it "[i]ndicates the collateral covered by the financing statement." Ohio Rev. Code § 1309.502(A)(3). A financing statement sufficiently indicates the collateral that it covers if the financing statement provides a description of the collateral pursuant to § 1309.108. Ohio Rev. Code. § 1309.504; *see Farm Credit Serv. of Mid-Am., ACA v. Rudy, Inc.*, 113 Ohio App. 3d 93, 99-100 (1996) (stating that a financing statement is sufficient "if the description would put a reasonably prudent prospective lender or buyer on notice that the collateral sought to be purchased or encumbered might be the subject of a preexisting security interest"). However, it is not necessary to address perfection of the Bank's security interest unless the court first determines that there exists a security interest in its favor in Debtor's accounts receivable.

The record suggests a factual dispute as to whether Debtor intended to grant a security interest in its accounts receivable, [*see* Doc. # 17, P. Singh Aff. (stating it was the intent of the parties that the accounts receivable be collateral) and Doc. # 26, I. Singh Aff. (stating that the issue was never discussed and the Bank sought only a security interest in the Camera and the personal guarantees of Debtor's shareholders)]. However, extrinsic evidence of intent of the parties apart from the words of the document is not admissible to enlarge a security interest unless the Security Agreement is ambiguous. *See In the Matter of Martin Grinding & Machine Works, Inc.*, 793 F.2d 592, 595, 597 (7th Cir. 1986)(security agreement unambiguously creates a security interest in "all machinery, equipment, furniture and fixtures;" court disallows extrinsic evidence to enlarge security interest to include inventory and accounts receivable). The court finds that it is not. As the Seventh Circuit noted in *Martin Grinding*, "[t]hat the security agreement omits any mention of inventory and accounts receivable as secured collateral is unfortunate for the Bank, but doe not make the agreement ambiguous." *Id*. at 595. Moreover, regardless of Debtor's intent, a security interest in Debtor's accounts receivable is enforceable under the UCC against third parties, such as Plaintiff, *only* if it sufficiently describes the accounts as collateral. *See* Ohio Rev. Code §§ 1309.203(B)(3)(a) and 1309.108. Debtor's intent apart from the collateral description in the Security Agreement is not a material fact for purposes of summary judgment in any event.

Although Plaintiff initially argues that the Security Agreement evidences no security interest in proceeds and products of the Camera, the court disagrees. Albeit in boilerplate, the Security Agreement clearly states that a security interest is being granted in "all of the Property described below" and in "all proceeds and products of the Property." [Doc. # 19, Ex. A, p. 2]. As the only "Property" identified in the Security Agreement is the Camera and related equipment, the issue is whether "proceeds and products of the Property" sufficiently describes Debtor's accounts receivable and funds collected on the accounts.

### A. Proceeds of Collateral

The term "Proceeds" is defined in the UCC to mean the following:

(a) Whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral;
(b) Whatever is collected on, or distributed on account of, collateral;
(c) Rights arising out of collateral;
(d) To the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to the collateral; or
(e) To the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to the collateral.

Ohio Rev. Code § 1309.102(A)(64).[6] The Security Agreement also defines "proceeds" in language mirroring the statutory definition. [Doc. # 19, Ex. A, p.2]. In addition, proceeds of proceeds are themselves proceeds. *See* Ohio Rev. Code § 1309.102(A)(12) (defining "collateral" as "the property subject to a security interest or agricultural lien, including: (a) Proceeds to which a security interest attaches. . . .") and Official Comment 13(c) ("[t]hat idea is expressed in the revised definition of "collateral").

In arguing that Debtor's accounts receivable are proceeds of the Camera, the Bank relies on the part of the definition that "[w]hatever is collected on, or distributed on account of, collateral" is proceeds. The Bank reasons that use of the Camera by Debtor resulted in a right to payment, or the accounts receivable, and that right to payment is proceeds of the Camera "since payment was certainly collected *on account of* the Camera." [Doc. # 20, p.5 (emphasis added)]. The court finds the Bank's argument flawed in several respects.

First, the Bank reasons that because the nature of Debtor's medical practice was nuclear heart stress

---

[6] Although Plaintiff cites *Great-West Life & Annuity Assurance Co. v. Parke Imperial Canton, Ltd.*, 177 B.R. 843 (N.D. Ohio 1994), for the proposition that the term "proceeds" is not limited to the technical definition of that term in the UCC and that proceeds result from some transformation of the collateral, the court in that case was interpreting "proceeds" as used in the Bankruptcy Code at 11 U.S.C. § 552(b) with respect to the post-petition effect of a security interest. That case was also decided before the definition of "proceeds" in the UCC was amended and expanded by the Ohio legislature in 2001.

7

testing and because its collateral is the nuclear stress test Camera, then "it only stands to reason that the collateral was the primary, if not exclusive, generator of accounts receivable. . . ." This contention, however, assumes facts not in evidence. The record is silent with respect to how Debtor's accounts receivable were generated. For example, the record is silent as to whether the accounts receivable were generated simply by use of the Camera or whether there was another ingredient in the generation of the accounts, such as the expertise and services of physicians comprising Debtor's medical practice. The record is silent as to whether the Camera produced an image that was then interpreted by the physicians. To the extent that the accounts receivable include the value of services rendered by the physicians, and are from an indistinguishable mixture of services and other assets of the business operation, they were not exclusively generated by the Camera. The record is also silent as to whether the Camera was the only camera or equipment that was used by Debtor's medical practice. This lack of evidence alone precludes a finding on summary judgment that the Bank has a security interest in all of Debtor's accounts receivable and funds collected thereon.

Nevertheless, the court also finds the Banks reasoning faulty in other respects. Even if Debtor's accounts receivable were generated solely by use of the Camera, the funds collected by Plaintiff were "collected on" the accounts receivable, not "collected on" the Camera. While those funds are proceeds of the accounts receivable, they are proceeds of the collateral only if the accounts receivable are themselves proceeds of the Camera. Because the accounts receivable represent debt owed to Debtor or a right to payment, it strains the statutory language to conclude that Debtor's accounts receivable constitute something that is "collected on" the Camera. Unlike, for instance, a right to payment under a contract where the contract is collateral securing an obligation, there is no right to payment that is generated by, or arises out of, the Camera itself.

In addition, according to the Bank, the accounts receivable were generated by *use* of the Camera. The Bank argues that the words "on account of, collateral" in § 1309.102(A)(64)(b) includes money collected from the use of the collateral. However, the entire provision states "[w]hatever is collected on, or distributed on account of, collateral." Ohio Rev. Code § 1309.102(A)(64)(b). As shown by the comma after the word "on," the phrase "on account of" modifies "distributed," not "collected." There was no distribution on account of the Camera, there was only funds collected on Debtor's accounts receivable. The Bank cites no authority that supports its position, and the court is not persuaded, that accounts receivable or funds collected thereon as the result of *using* equipment collateral constitute proceeds under the UCC.

The court finds support for its determination that Debtor's accounts receivable do not constitute

8

proceeds in the report of the Permanent Editorial Board for the UCC (PEB Report) prior to Article 9 being amended to provide the expanded definition of "proceeds" found in § 1309.102(A)(64).[7] While the PEB Report recommended expanding the definition of "proceeds," it attempts to define the logical limit of the term, a limit the Bank's argument obliterates:

> At some point, the acquisition of assets by a debtor, in part as a result of a diminution in value of collateral, will be too attenuated for those assets to be considered proceeds. For example, accounts generated by a construction contractor should not be considered proceeds of the contractor's construction equipment, even though the equipment depreciates as a result of its use in generating the accounts. Nor should inventory fabricated by a debtor's factory equipment be considered proceeds of that equipment. Cash earned from music or video machines presents a case closer to the margin. Has the equipment merely provided a service, or is the better analogy that of a short-term rental? The Committee is inclined to leave such marginal cases to the courts.

R. Wilson Freyermuth, *Rethinking Proceeds: The History, Misinterpretation and Revision of U.C.C. Section 9-306*, 69 Tul. L. Rev. 645, 698 (1995) (quoting Permanent Editorial Bd. for the U.C.C., PEB Study Group U.C.C. Article 9 at 111, n.16 (1992)); *see also 1st Source Bank v. Wilson Bank & Trust*, 2012 WL 4711989, *3, 2012 U.S. Dist. LEXIS 143024, *8-9 (M.D. Tenn. Oct. 3, 2012) (finding that "accounts receivable" relating to the use of collateral do not fall within the definition of "proceeds"); *cf. In re S & J Holding Corp.*, 42 B.R. 249 (Bankr. S.D. Fla. 1984)(security interest in video game equipment collateral does not attach to cash generated from use of game machines). The court likewise concludes that accounts receivable generated from use of equipment do not constitute proceeds of the equipment.

### B. Products of Collateral

Reddy and the Bank also argue that Debtor's accounts receivable are a product of the Camera.[8] The term "product" is not defined in the UCC. The parties rely on a definition of "product" as "yield, income, receipts, [or] return." Black's Law Dictionary 1209 (6th ed. 1990). Those terms are further defined as follows: "Yield" is defined as "[c]urrent return from an investment or expenditure as a percentage of price of investment or expenditure." *Id.* at 1616. "Income" is defined as "[t]he return in money from one's

---

[7] The PEB has been established by the American Law Institute and the National Conference on Commissioners of Uniform State Laws to study and propose appropriate revisions to the Uniform Commercial Code. Jonathan C. Lipson, *Remote Control: Revised Article 9 and the Negotiability of Information*, 63 Ohio St. L.J. 1327, n.271(2002).

[8] Reddy offers the affidavit of Parminder B. Singh in support of this argument. Singh states in his affidavit that "the only products of the camera and related equipment are the accounts receivable from patients of Gamma Center, Inc." Whether the accounts receivable constitute a product of the Camera is a legal conclusion. The conclusory statement is, thus, not sufficient to either support or defeat a motion for summary judgment. *See Sigmon v. Appalachian Coal Properties, Inc*., 400 Fed.Appx. 43, 49 (6th Cir. 2010) (citing *Galindo v. Precision Am. Corp*., 754 F.2d 1212, 1216 (5th Cir.1985) ( "[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment.").

business, labor, or capital invested." *Id.* at 763. "Receipt" is defined as "[t]hat which comes in, in distinction from what is expended. . . ." *Id.* at 1268. "Return" is defined as "[p]rofit on sale, or income from investments." *Id.* at 1318.

As discussed above, however, the accounts receivable consist of debt that is owed to Debtor. As such, it does not constitute yield, income, receipts or return. Debtor has obtained no yield, income, receipt or return on the Camera until payment is received. As stated in Debtor's Schedule B, the listed value of its accounts receivable "is the billed amount to patients. The actual expected payment from insurance and patients is much less than this amount." [Case No. 10-30193, Doc. # 1, p. 8/35].

Although the Security Agreement clearly provides for a security interest in proceeds and products of the Camera, the court finds that those terms do not reasonably describe Debtor's accounts receivable or the funds collected thereon. Neither the term "proceeds" nor the term "products" of the collateral, described only as the Camera and related equipment, constitute a sufficient description of accounts receivable. Furthermore, any person reviewing the Security Agreement and observing the unchecked box next to "Accounts and Other Rights to Payment" would unambiguously conclude that the accounts receivable were *not* collateralized. Especially since the box for "Accounts and Other Rights to Payment" is not checked, it is not objectively determinable from the Security Agreement that it creates a security interest in Debtor's accounts receivable. The Security Agreement's description does not "do the job assigned to it," which the Bank asserts is to create a security interest in Debtor's accounts receivable. That is, it does not "[m]ake possible the identification of the collateral described." Ohio Rev. Code § 1309.108, Official Comment 2. As such, the Security Agreement does not create a security interest in favor of the Bank in the accounts receivable or the funds collected on those accounts.

## CONCLUSION

Having found, based upon the undisputed facts, that the Security Agreement does not provide the Bank a security interest in Debtor's accounts receivable or the funds collected thereon, the court will grant Plaintiff's motion for summary judgment and will deny both the Bank's and Reddy's motions for summary judgment. The court will enter a separate judgment in accordance with this memorandum of decision and order.

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 19] be, and hereby is, **GRANTED**; and

**IT IS FURTHER ORDERED** that The Commercial Savings Bank's Motion for Summary Judgment [Doc. #20] be, and hereby is, **DENIED**; and

**IT IS FINALLY ORDERED** that Sudesh Reddy's Motion for Summary Judgment [Doc. # 16] be, and hereby is, **DENIED.**

###